**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSEPH ABRUSCATO, and TIMOTHY WILSON, on behalf of themselves and others similarly situated )<br><br>Plaintiffs, )<br><br>v. )<br><br>MEDICAL BUSINESS BUREAU, LLC; EQUIFAX INFORMATION SERVICES, LLC; SWEDISH EMERGENCY ASSOCIATES, PC )<br><br>Defendant. ) | No. 12-cv-00322<br>Judge Zagel |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO SWEDISH
EMERGENCY ASSOCIATES' MOTION TO DISMISS COUNT IV**

Plaintiffs, Joseph Abruscato and Timothy Wilson, respond as follows to the motion to dismiss filed by defendant Swedish Emergency Associates, PC ("Swedish").[1]

**STATEMENT OF FACTS**

Plaintiffs were both injured on the job while working for the Cook County Sheriff's Department. (Amd.Cmpt., ¶11) Plaintiffs were taken to the emergency room at Swedish Covenant Hospital as a result of the injuries they sustained on September 25, 2008. Plaintiffs informed the personnel at the hospital that their injuries were sustained on the job. (Amd.Cmpt., ¶12) Plaintif Abruscato filed an Employee Accident Report with the Cook County Department of Risk Management, Workers' Compensation Division on September 25, 2008. (Amd. Cmpt., ¶13) Plaintiff Wilson filed a similar report on the same date. *Id.*

Under the Illinois Workers' Compensation Act, plaintiffs' employer was legally responsible for all payments related to plaintiffs' injuries, and medical providers, such as Swedish,

---

[1] Swedish filed its motion before plaintiffs filed their amended complaint. The Court granted plaintiff Abruscato leave to file an Amended Complaint, but also required him to respond to the motion to dismiss on the same date. Due to this fact, plaintiffs' citations to the Amended Compliant will differ from Swedishes' citations to the original Complaint.

1

were not permitted to attempt to collect payments from plaintiffs. The relevant sections of 815 ILCS 305/8.2(e) provide:

> **Except as provided under subsections (e-5), (e-10), (e-15), and (e-20), a provider shall not bill or otherwise attempt to recover from the employee the difference between the provider's charge and the amount paid by the employer or the insurer on a compensable injury, or for medical services or treatment determined by the Commission to be excessive or unnecessary.**
>
> **(e-5) If an employer notifies a provider that the employer does not consider the illness or injury to be compensable under this Act, the provider may seek payment of the provider's actual charges from the employee for any procedure, treatment, or service rendered. <u>Once an employee informs the provider that there is an application filed with the Commission to resolve a dispute over payment of such charges, the provider shall cease any and all efforts to collect payment for the services that are the subject of the dispute</u>.**
>
> **\*\*\*\*\*\*\*\*\*\*\*\*\*\***
>
> **(e-15) When there is a dispute over the compensability of or amount of payment for a procedure, treatment, or service, and a case is pending or proceeding before an Arbitrator or the Commission, the provider may mail the employee reminders that the employee will be responsible for payment of any procedure, treatment or service rendered by the provider. <u>The reminders must state that they are not bills, to the extent practicable include itemized information, and state that the employee need not pay until such time as the provider is permitted to resume collection efforts under this Section. The reminders shall not be provided to any credit rating agency.</u> The reminders may request that the employee furnish the provider with information about the proceeding under this Act, such as the file number, names of parties, and status of the case. If an employee fails to respond to such request for information or fails to furnish the information requested within 90 days of the date of the reminder, the provider is entitled to resume any and all efforts to collect payment from the employee for the services rendered to the employee and the employee shall be responsible for payment of any outstanding bills for a procedure, treatment, or service rendered by a provider. (emphasis added)**

Swedish knew that plaintiffs' employer was the responsible party and billed the employer. (Amd. Cmpt. <u>Ex. A</u>). Although some of plaintiffs' hospital bills were paid, one medical bill relating to plaintiff Abrascato's injury was not paid, due to an employer error. Instead of attempting to collect the bill from the employer, as it was legally required to do, Swedish sent the account to a collection agency to attempt to collect the bill from plaintiff. When Swedish sent the account to a collection agency, it falsely informed the collection agency that the account was a "self-

2

pay" account, despite being fully aware that it was not a "self-pay" but instead an account covered by workers' compensation. (Amd.Cmpt., ¶17) One of plaintiff Wilson's bills was similarly not paid promptly, and Swedish assigned his accounts to Medical Business Bureau, LLC ("MBB") for collection in July, 2009, despite being fully aware that the account was covered by workers' compensation. (Amd.Cmpt., ¶18)

In October 2009, plaintiff Abruscato saw that there was a negative "tradeline" on his credit report from MBB listing the Swedish account, and contacted MBB. MBB had reported Mr. Abruscato's accounts to the credit bureaus for the purpose of coercing him into paying it. (Amd. Cmpt., ¶¶19, 20) Reporting a debt to a credit bureau is "a powerful tool designed, in part, to wrench compliance with payment terms. . . ." *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993). This is especially true now, after the severe tightening of credit standards, and it is virtually impossible to get a mortgage now with a recent outstanding or disputed collection account on your credit report. Pursuant to the Fair Credit Reporting Act, an adverse account can remain on a consumer's credit report for up to seven years.

On November 12, 2009, plaintiff Abruscato received a collection letter from defendant MBB informing him that his medical bill had been assigned for collection. (Amd.Cmpt., Ex. B) . MBB reported plaintiffs' accounts to the credit bureaus as if they were delinquent obligations of plaintiffs. After receiving the collection letter from MBB, Mr. Abruscato contacted MBB in an attempt to resolve the situation, although it was actually Swedish's responsibility to do so. He asked for a copy of the bill, and was provided only a copy of an internal MBB document. When Mr. Abruscato asked MBB for the actual bill he was told he would "never" get it from MBB. (Amd.Cmpt., ¶24)

Abruscato therefore contacted Swedish in December, 2009 to try to obtain a copy of the bill. He informed them that it was a workers' compensation bill and that he was not responsible for payment. The Swedish representative informed plaintiff that the bill had been submitted to the employer a few times and had not been paid, so they sent it to collections. (Amd.Cmpt., ¶25)

Swedish did not take any actions to remove the account from collections, despite being informed by Mr. Abruscato in December, 2009, that the bill was covered by worker's compensation. Nor did Swedish take any actions to inform MBB that the bill was not a "self-pay," as it had initially falsely informed MBB. (Amd.Cmpt., ¶26) In December 2009, although it was actually defendants' Swedish and MBB's responsibility to do so, plaintiff Abruscato resubmitted the bill he obtained from Swedish to his employer, and the bill was paid to Swedish within sixty days. (Amd.Cmpt., ¶27) Plaintiff Wilson also repeatedly resubmitted the bills to his employer for payment, despite the fact that it was Swedish's obligation to do so, and the accounts were eventually paid in early 2011. (Amd.Cmpt., ¶28) Even after the medical bills were paid, the accounts continued to appear on plaintiffs' credit reports as adverse collection accounts. (Amd.Cmpt., ¶29)

In March 2010, plaintiff Abruscato contacted MBB directly to ask that the account be removed from his credit report and was informed that the account would be removed from his credit report only if he paid them directly. (Amd.Cmpt., ¶30) Plaintiff Abruscato informed MBB that the account was for an injury compensable under the Illinois Workers' Compensation Act. MBB continued to insist that plaintiff pay it himself. (Amd.Cmpt., ¶31) Beginning in March 2010, plaintiff Abruscato sent three dispute letters to Equifax in an attempt to have the account removed from his credit report. On June 1, 2010, June 30, 2010, and July 22, 2010, Equifax responded to plaintiff Abruscato's disputes by informing him that the debt had been verified as belonging to him. (Amd.Cmpt., Ex.t C). On May 10, 2011, after receiving further disputes from Mr. Abruscato, Mr. Abruscato was informed by Equifax that MBB was reporting a zero balance for the account, but not removing it. (Amd.Cmpt., Ex. E). On May 18, 2011, plaintiff Abruscato again wrote to Equifax explaining that the account was covered by a workers' compensation claim, and thus, belonged to his employer, and again requested that the account be removed from his credit report. (Amd.Cmpt., Ex. F). Equifax contacted MBB about Mr. Abruscato's dispute and requested that MBB check its records and report back to it about the accuracy of the information it was reporting about him. By letter dated June 1, 2011, Equifax informed plaintiff that MBB had verified the debt as belonging

to him. (Amd.Cmpt., Ex. G)

Mr. Wilson discovered that MBB had reported the Swedish account as being a collection account that was his responsibility when he applied for a student loan for his son. He was denied a loan by the original lender, and had to apply with another lender, because the MBB collection account was on his credit report. (Amd. Cmpt., ¶43)

Plaintiffs have suffered actual damages as a result of defendant's conduct, along with the distress of being subjected to collection attempts and adverse credit reporting for debts that were not legally their responsibility. Plaintiff Abruscato had to postpone plans to refinance his home due to this adverse account. Abruscato's credit limits on existing credit cards have been lowered (Amd.Cmpt., Ex. I). Abruscato was also denied for a new credit card due to the adverse credit reporting. Abruscato also suffered emotional distress and spent extensive time attempting to correct the problem, and also expended time and money on postage and phone calls both in an attempt to both get the bill paid (which was not his responsibility pursuant to Illinois law) and get the item off his credit report. Plaintiff Wilson also had to spend time and money attempting to get the bill paid (which was not his responsibility pursuant to Illinois law) and to get the item off his credit report. (Amd. Cmpt., ¶45)

Illinois public policy provides that employees should be able to receive medical care for injuries sustained on the job, that the care should be paid for by their employers, and that medical providers are not permitted to attempt to collect the resulting medical bills directly from the employees or to report those bills to the credit bureaus. Illinois public policy also places the burden of collecting payments for injuries covered by worker's compensation on medical providers, and not employees. (Amd.Cmpt., ¶87) Plaintiffs have alleged that Swedish engaged in unfair and deceptive acts and practices, and violated Illinois public policy, 820 ILCS 305/8.2 and 815 ILCS 505/2, when it hired a collection agency to attempt to collect directly from patients bills for which claims had made under the Illinois Workers' Compensation Act.

## I. PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT.

Swedish contends that plaintiffs have not stated a claim for violation of the Illinois Consumer Fraud Act ("CFA") because they have not alleged any deceptive conduct committed by Swedish directly. The Amended Complaint does allege deceptive conduct by Swedish, namely that when Swedish hired a collection agency to collect on plaintiffs' workers' compensation related accounts, Swedish informed that collection agency that the accounts were "self-pay" accounts, which was untrue under the circumstances

Moreover, the CFA expressly prohibits "unfair" as well as "deceptive" acts and practices. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 775 N.E.2d 951 (2002). Plaintiffs allege both. In determining whether an act or practice is "unfair," courts consider "whether the practice . . . offends public policy as it has been established by statutes, the common law, or otherwise", (2) "whether it is immoral, unethical, oppressive or unscrupulous", and (3) "whether it causes substantial injury to consumers (or competitors or other businessmen)." *Robinson, citing FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244-45 n. 5 (1972). Furthermore, "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 201 Ill.2d at 418, 775 N.E.2d at 961.

Conduct which violates Illinois law and public policy can form the basis of a CFA claim. *Glen Ellyn Pharm., Inc. v. Meda Pharms., Inc.*, 2011 U.S. Dist. LEXIS 5531 (N.D. Ill. Jan. 13, 2011) (violation of state and federal law prohibiting the sending of "junk" faxes also violated the CFA); *R. Rudnick v. G.F. Protection, Inc.,* 2009 U.S. Dist. LEXIS 3152, 2009 WL 112380 (N.D. Ill. Jan. 15, 2009) (same); *G.M. Sign, Inc. v. Stergo,* 681 F.Supp.2d 929, 935 (N.D.Ill. 2009); *Hill v. Sisters of St. Francis Health Servs.,* 2006 U.S.Dist. LEXIS 92874, at **3-5 (N.D.Ill. Dec. 20, 2006) (hospital's practices which violated public policy as expressed in the Illinois Revenue Code constituted an unfair practice under the CFA); *Hill v. PS Ill. Trust*, 368 Ill.App.3d 310, 319-20, 856

N.E.2d 560, 568 (1st Dist. 2006) (storage facility violated protections provided for by the Illinois Storage Act).

Defendant's conduct is clearly unfair under the *Sperry* test. The fact that the conduct violates the Illinois workers' compensation statute makes it apparent that the conduct is against public policy. It is also obviously immoral, unethical, or oppressive to hire a collection agency to pursue an employee for debt which Swedish is only permitted to collect from the employer. In Mr. Abruscato's case, Swedish's employees admitted to Mr. Abruscato that they knew it was a workers' compensation account, but they sent it to collections anyways. (Amd.Cmpt., ¶89) When he called Swedish to complain about being subjected to the collection activity and having the account appear on his credit report, Swedish took no action to remove the account from collections or remedy the situation. *Id.* Swedish was instead shifting the burden of collecting workers' compensation accounts from the employer, to plaintiffs, in clear violation of Illinois law. Swedish's actions resulted in employees such as plaintiffs being subjected to harassment by a collection agency, and in damage to their credit reports. This is precisely the type of problem the Illinois legislature was trying to prevent, when it amended the Illinois Workers' Compensation Statute to add the provisions barring medical providers from collecting from employees. Swedish's conduct causes substantial injury to the public, as it subjects consumers such as plaintiffs to collection efforts, and damage to their credit scores. Both plaintiffs suffered actual damages, including the denial of credit applications as a result of the Swedish accounts showing up on their credit reports.

Swedish also argues that it cannot be held liable for the actions of MBB merely on an agency theory. However, as explained above, plaintiffs are not relying merely on agency, but are instead relying on Swedish's own conduct. It was a violation of Illinois law for Swedish to hire MBB to collect the accounts in question directly from the consumer. Swedish cannot direct a debt collector to perform conduct which violates Illinois law, and then claim it is not liable because the debt collector, and not itself, performed the actual collection activities. None of the cases Swedish relies on which found that a creditor cannot be liable for a debt collector's conduct based purely on

an agency theory involved a situation like this one, where the creditor had no right to hire the collection agency in the first place. *Scally v. Hillco Receivables, LLC,* 392 F.Supp.2d 1036 (N.D.Ill. 2005), involved a situation in which the plaintiff was attempting to hold the creditor liable for the collection agency's violation of the FDCPA, over which it had no control. In this case, on the other hand, plaintiffs are seeking to hold Swedish liable for its own conduct in hiring MBB in the first place, to collect accounts directly from plaintiffs, when it was prohibited by state law from doing so.

Under the Illinois CFA, principals can be held liable for their agent's CFA violations. *Lang v. Consumer Ins. Services*, 222 Ill. App. 3d 226, 238-9, 583 N.E.2d 1147, 1156 (2d Dist. 1991) (reversing in part summary judgment where complaint stated sufficient allegations to hold both principal and agent liable under the CFA). *See also, Washington Court Condominium Association-Four v. Washington Golf Corp.*, 267 Ill.App.3d 790, 816, 643 N.E.2d 199, 217 (1st Dist. 1994) (principals held liable under CFA for tortious conduct by agents); *Warren v. LeMay*, 142 Ill.App.3d 550, 491 N.E.2d 464 (5th Dist. 1986)(residential realty vendors' broker and the exterminator hired by vendors liable to buyers for negligent termite inspection report; emphasizing broad construction of the CFA in light of its "broad remedial purposes").

Moreover, plaintiffs have alleged sufficient facts to allege an agency relationship, unlike the plaintiffs in *Tribett v. BNC Mortgage.,* 2008 U.S.Dist. LEXIS 3573 (N.D.Ill. Jan. 17, 2008). Plaintiffs alleged that Swedish hired MBB to collect plaintiffs' accounts on its behalf. The letter sent by MBB to plaintiff Abruscato, attached as <u>Ex. B</u> to the Amended Complaint, provides that the Swedish account "has been assigned to us for collection," and it lists the date Mr. Abruscato was treated at Swedish, along with Swedishes' internal account numbers. It is clear from these facts that Swedish hired MBB to be its agent to attempt to collect plaintffs' accounts from plaintiffs, and Swedish cannot claim to be unaware, after hiring MBB to collect the accounts, that MBB would indeed do what it was hired to do.

Given the facts alleged in the Amended Complaint, the motion to dismiss filed by

Swedish should be denied.

## CONCLUSION

For the reasons stated above, plaintiffs request that this Court deny the motion to dismiss Count IV filed by Swedish.

/s/ Tara L. Goodwin
Tara L. Goodwin

Daniel A. Edelman
Tara L. Goodwin
Rupali R. Shah
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

**CERTIFICATE OF SERVICE**

   I, Tara L. Goodwin, hereby certify that on March 27, 2012, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system and notification of such filing was sent to the following parties:

Michael D. Douglas
Lewis P. Perling
Barry Goheen
King & Spalding LLP
1180 Peachtree Street
Atlanta, Georgia 30309-3521
(404) 572-3079
FAX: (404) 572-5172

David M. Schultz
Corinne C. Heggie
Hinshaw & Culbertson LLP
Suite 300
222 North LaSalle Street
Chicago, IL 60601
(312) 704-3527
FAX: (312) 704-3001

Benjamin B. Folsom
David B. Goroff
Foley & Lardner LLP
321 N. Clark St., Suite 2800
Chicago, IL 60654
312-832-4500

Jeremy S. Unruh
Rodney Lewis
Polsinelli Shughart, PC
161 N. Clark St.
Chicago, IL 60601
312-819-1900

                /s/ Tara L. Goodwin
                Tara L. Goodwin


Daniel A. Edelman
Tara L. Goodwin
Rupali R. Shah
EDELMAN, COMBS, LATTURNER
 & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)