**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH ABRUSCATO, on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 1:12 CV 00322 |
| MEDICAL BUSINESS BUREAU, LLC; EQUIFAX INFORMATION SERVICES, LLC; SWEDISH EMERGENCY ASSOCIATES, PC, | ) ) ) ) | Judge James P. Zagel |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS COUNT I OF PLAINTIFFS' AMENDED COMPLAINT**

Defendant, MEDICAL BUSINESS BUREAU ("MBB"), by its attorneys David M. Schultz, Corinne C. Heggie, and Nicholas D. O'Conner for its Memorandum of Law in support of its Motion to Dismiss Count I of Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) states:

**INTRODUCTION**

Plaintiffs, Joseph Abruscato ("Abruscato") and Timothy Wilson ("Wilson"), filed a four-count Amended Complaint ("Complaint") alleging that MBB violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA") in Count I and the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq*. ("FCRA") in Count II. Plaintiffs filed their FDCPA claim against MBB in Count I on behalf of alleged putative class.[1]

Plaintiffs allege MBB violated §§1692e, e(2), e(5), e(8), e(10) and f(1) because MBB: (1) demanded plaintiffs pay debts that were not legally their responsibilities; (2)

---

[1] Count III is not directed to MBB. Count IV was dismissed April 25, 2012.

130332216v1 0931197

falsely reported and continued to report the debts as plaintiffs' obligations to the credit bureaus; (3) refused to request tradelines be removed after being notified the debts were covered by workers' compensation and (4) verified the debts as belonging to plaintiffs in response to disputes. Plaintiffs' Amended Complaint, attached as Ex. A, ¶48 (a)-(d).

However, plaintiffs have alleged that MBB's violations of the FDCPA occurred in 2009, effectively pleading themselves out of court. Plaintiffs failed to file a lawsuit until January 2012, which is well outside of the FDCPA's one-year statute of limitations. T he continuing violations doctrine does not apply here because the FDCPA claims, as alleged, became actionable in 2009. Therefore, Count I one plaintiffs' Complaint should be dismissed pursuant to Rule 12(b)(6).

**FACTUAL ALLEGATIONS**

In the Complaint, plaintiffs allege that they were injured on September 25, 2008 in a work related accident and taken to Swedish American Hospital (Swedish). Plaintiffs' Amended Complaint ¶¶ 11-12, attached as Ex. A. Plaintiffs allegedly filed Employee Accident Reports the same day with the Cook County Department of Risk Management. *Id.* ¶¶ 13. As of January 22, 2009, the Cook County Department of Risk Management did not have a workers' compensation claims for either Abruscato or Wilson. See Dkt. #50, Exhibits 1 & 2. Once plaintiffs' employer instructed Swedish it (the employer) did not consider their accounts compensable, Swedish, pursuant to Illinois' workers' compensation statute, sought the balances owed from Abruscato and Wilson. In July, 2009, Swedish sent plaintiffs' past due accounts to MBB for collection as self-pay, which was not deceptive. Ex. A, ¶¶ 18, 19; Dkt. #56, Memorandum and Opinion Order, at p. 2.

130332216v1 0931197

In 2009, MBB initiated its collection efforts. MBB sent several collection letters to Abruscato during autumn of 2009. MBB Collection Letters, attached as Group Ex. B. Wilson likely received letters during this same period. In October 2009, Abruscato discovered that MBB had listed a negative trade line on his credit report. Ex. A, ¶¶ 19. Abruscato asserts that Equifax informed him that the debt had been verified via letters dated June 1, 2010, June 30, 2010, and July 22, 2010. Ex. A, ¶ 33. In May 2010, Abruscato then sent disputes to the three major credit agencies. Ex. A, ¶ 34. Abruscato received a response from Equifax on May 10, 2011 stating that MBB reported a zero balance on the account, but had not removed it. Ex. A, ¶ 35. The allegedly false information continued to be listed on his credit report as of June 2011. Ex. A, ¶ 41.

As for Wilson, his bills were allegedly "not promptly paid through Worker's Comp;" however, he repeatedly resubmitted his bills and they were "eventually paid in early 2011." Ex. A, ¶ 18, 28. Wilson alleges that MBB continued to report this information to the credit bureaus through July, 2011. Ex. A, ¶ 41.

## STANDARD OF REVIEW

"A complaint that on its face reveals that plaintiff's claim is barred by the statute of limitations or repose can be dismissed on a motion to dismiss." *Tregenza v. Great American Communications Company*, 12 F.3d 717, 719 (7th Cir. 1993). Therefore, while a statute of limitations defense is not normally part of a motion under Rule 12(b)(6), it is appropriate "where 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations.'" *Andonissamy v. Hewlett-*

130332216v1 0931197

*Packard Company*, 547 F.3d 841, 847 (7th Cir. 2008) *quoting U.S. v. Lewis*, 411 F.3d

838, 842 (7th Cir. 2005).  Here, in Count I of the Amended Complaint, plaintiffs pled

facts demonstrating the alleged FDCPA violation occurred outside of the Act's one-year

statute of limitations period warranting dismissal.

## ARGUMENT

I.      **Count I of Plaintiffs' Amended Complaint Should Be Dismissed.**

      A.      **Plaintiffs' FDCPA Claims Against MBB Are Time-Barred.**

Plaintiffs' claims for alleged violations of the FDCPA are time-barred.  Plaintiffs

claim that the collection activity took place during 2009-2010, and specifically in the

summer of 2009 when their accounts were referred to MBB.  Ex. A, ¶18, 19. Collection

letters were sent to Abruscato beginning in autumn 2009.  Group Ex. B. Wilson likely

received very similar letters beginning in late 2009 as well.

The FDCPA states that "an action to enforce any liability created under this

subchapter may be brought in any appropriate United States district court without regard

to the amount in controversy, or in any other court of competent jurisdiction, within one

year from the date on which the violation occurs."  15 U.S.C. §1692k(d); *Gulley v. Pierce*

*& Associates, P.C.,* 436 Fed.Appx. 662, 664 (7th Cir. 2011); *See Flores v. Millenium*

*Interests, LTD.*, 273 F.Supp.2d 899, 901 (S.D. Texas  2003) (holding that plaintiff's

alleged FDCPA claim is barred by the one-year statute of limitations because plaintiff

knew about the negative reporting in 2000, but waited until 2003 to file suit).

In *Gulley*, the Seventh Circuit affirmed the District Court's dismissal of a

complaint in which the FDCPA violations were alleged to have occurred in 2008, yet the

plaintiff waited until 2010 to file suit. *Gulley*, 436 Fed.Appx at 664. Here, like in *Gulley*, the plaintiffs are alleging that violations occurred in 2009, but they have waited until 2012 to file suit. Abruscato alleges in the Amended Complaint that "in October, 2009" he saw "there was a negative 'tradeline' on his credit report from MBB and contacted MBB." In early 2011, Abruscato's account was paid after he resubmitted the bills to his employer. Ex. A, ¶27. While Abruscato was aware of the alleged FDCPA violations in October 2009, he waited over two years, until January 17, 2012, to sue MBB. See Dkt. #1.

Similarly, even though Wilson does not allege with particularity or detail his communications with MBB after his account was placed with it (MBB) in July 2009, he claims he resubmitted his bills to his employer before early, 2011, at which time the bills were eventually paid by the employer. Ex. A, ¶28. Absent facts to the contrary, Wilson's FDCPA claims, like Abruscato's, should be dismissed based upon the one year statute of limitations because their initial Complaint was filed more than one year after the alleged violation occurred.

**B. Plaintiffs' Claims Do Not Fall into the Narrow Scope of the Continuing Violations Doctrine.**

In an attempt to evade the FDCPA's strict one-year statute of limitations, plaintiffs allege (and will argue) their claims survive a statute of limitations challenge because Equifax continued to report false information based on Defendant's actions in June 2011 and July 2011. Ex. A, ¶19. Plaintiffs are alleging, in essence, that the FDCPA violations that they claim originally occurred in or before October of 2009, "continued"

130332216v1 0931197

through July 2011 thereby allowing their claims to fall within the FDCPA's one year statute of limitations. In order to put forth this argument, plaintiffs must rely on the continuing violations doctrine. This exemption from the statute of limitations is not applicable, however, because plaintiffs' allegations fall outside the doctrine's protections.

The Seventh Circuit and courts in this District have emphasized that the continuing violation doctrine applies narrowly where there is no violation at all until a series of non-actionable wrongs accumulate to form a cause of action. *Judy v. Blatt, Hasenmiller, Leibsker and Moore LLC,* 2010 WL 431484 at * 3 (N.D. Ill. January 29, 2010) citing *Limestone Dev. Corp. v. Village. of Lemont, Ill.,* 520 F.3d 797, 801 (7th Cir. 2007). In *Judy,* the plaintiff claimed the defendant had "continued to prosecute" a collection action until a date which would have satisfied the statute of limitations. *Judy,* 2010 WL 431484 at * 4. The court held that the mere fact that a violation continues does not toll the statute of limitations. *Id.*

Additionally, Courts in this District have ruled that a claim should be dismissed if the only basis for the injury is the continuing violation doctrine and the actual FDCPA violation occurred outside of the limitations period. *Hardaway v. CIT Group/Consumer Finance Inc.*, 2011 WL 3296825 at *3 (N.D. Ill. August 01, 2011) ("Plaintiff concedes that his complaint was filed after the one-year deadline, and argues only that his claim viable based on a theory of continuing violation. But this theory lacks support in the law [sic]").

130332216v1 0931197

The continuing violations doctrine is indeed narrow.  In *Limestone,* the Seventh Circuit used a sexual harassment claim as an example of the proper application of the continuing violations doctrine:

> The first instance of a coworker's offensive words or actions may be too trivial to count as actionable harassment, but if they continue they may eventually reach that level and then the entire series is actionable. If each harassing act had to be considered in isolation, there would be no claim even when by virtue of the cumulative effect of the acts it was plain that the plaintiff had suffered actionable harassment.

*Limestone Dev. Corp. v. Village. of Lemont, Ill.,* 520 F.3d 797, 801 (7th Cir. 2007). The court further explained that the continuing violation doctrine is misnamed as it is "a doctrine not about a continuing, but about a cumulative, violation." *Id.*

In the present case, assuming for argument's sake that plaintiffs' allegations are true (which they are not), the initial collection activities in 2009 were not trivial nor were they cumulative.  Rather, they were discrete, actionable violations of the FDCPA for which relief must have been sought within a year. MBB sent collection letters to Abruscato during autumn of 2009.  Group Ex. B.  Wilson likely received letters during this same period.  In October 2009, Abruscato discovered that MBB had listed a negative trade line on his credit report, but did not take action to file suit.  Ex. A, ¶¶ 19. Wilson's bill was "eventually paid in early 2011."  Ex. A, ¶ 18, 28.  All of these facts tend to prove that if plaintiffs indeed had a cause of action, they must have sought relief well before 2012.

Plaintiffs have alleged that "MBB continued to report the false information to Equifax regarding Abruscato as recently as June 2011, and Wilson as recently as July 2011." Ex. A ¶ 41.  The mere fact that the alleged violation, which plaintiffs argue began

130332216v1  0931197

in 2009, continued until June or July of 2011 does not toll the statute of limitations until

the end of that period. Both plaintiffs failed to timely seek relief under the statute.

Simply because plaintiffs allege that they struggled to get the information off of their

credit reports through 2011 does not mean that they can avoid the limitations period

prescribed by the statute.

Finally, several other circuits have addressed the "continuing violations" rule and

used it to enforce the statute of limitations. For example, the Third Circuit Court of

Appeals granted summary judgment in favor of the debt collector defendant where the

original violation occurred outside of the limitations period reasoning that:

> We do not believe that the former are subject to a so-called "continuing
> violations" rule that would re-set the statute of limitations clock with each
> separate communication. Other circuits have held, entirely reasonably, that
> the FDCPA statute of limitations should begin to run on the date of
> "the debt collector's last opportunity to comply with" the Act. *Naas v.
> Stolman*, 130 F.3d 892, 893 (9th Cir.1997) (quoting *Mattson v. U.S. West
> Commc'ns*, 967 F.2d 259, 261 (8th Cir.1992)); *see also Maloy v. Phillips*,
> 64 F.3d 607, 608 (11th Cir.1995) (endorsing the Eighth Circuit's reasoning
> in Mattson ).

*Peterson v. Portfolio Recovery Associates, LLC*, 430 Fed.Appx. 112 (3rd Cir. 2011).

Plaintiffs allege that defendant violated the FDCPA by listing the negative information on

Abruscato's credit report in 2009 and verifying it in June 2010. Ex. A, ¶19, 33, 48.

Even if one assumes that an FDCPA violation did occur, it occurred in 2009 when

the allegedly false information was reported to the credit bureaus about plaintiffs. That

is, the violation became actionable in 2009. At that point, Defendant would have no

longer had an opportunity to comply with the FDCPA because there was already a

violation. This is a not a scenario where a series of non-actionable wrongs started in

2009 and eventually became actionable in 2011. Rather, based on plaintiffs' own

130332216v1 0931197

allegations, any violations of the FDCPA by defendant against plaintiffs were already completed and actionable in 2009. Based on the facts alleged in the Amended Complaint, Plaintiffs could have brought this lawsuit as early as October 2009. Plaintiffs, however, failed to bring a claim alleging violations of the FDCPA until 2012. As a result, Count I of Plaintiffs' Complaint should be dismissed because it is barred by the one year statute of limitations under the FDCPA and the narrow scope of the continuing violations doctrine does not apply.

WHEREFORE, Defendant, MEDICAL BUSINESS BUREAU, LLC, prays that Count I of Plaintiffs' Amended Complaint be dismissed with prejudice and the Court grant all other relief to the defendant which the Court finds to be appropriate and just.

Respectfully submitted,

MEDICAL BUSINESS BUREAU, LLC,

By: s/Corinne C. Heggie
     One of its Attorneys

David M. Schultz
Corinne C. Heggie
Nicholas D. O'Conner
Hinshaw & Culbertson LLP
222 N. LaSalle St., Suite 300
Chicago, IL 60601-1081
Tel:    312/704-3000
Fax:    312/704-3001
dschultz@hinshawlaw.com
cheggie@hinshawlaw.com
noconner@hinshawlaw.com

130332216v1 0931197