IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH ABRUSCATO, and TIMOTHY WILSON, on behalf of themselves and others similarly situated )<br><br>Plaintiffs, )<br><br>v. )<br><br>MEDICAL BUSINESS BUREAU, LLC; EQUIFAX INFORMATION SERVICES, LLC; )<br><br>Defendants. ) | No. 12-cv-00322<br>Judge Zagel |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MEDICAL BUSINESS BUREAU'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Plaintiffs, Joseph Abruscato and Timothy Wilson, respond as follows to the motion to dismiss filed by defendant Medical Business Bureau, LLC ("MBB").

**STATEMENT OF FACTS**

Plaintiffs were both injured on the job while working for the Cook County Sheriff's Department. (Amd.Cmpt., ¶11) Plaintiffs were taken to the emergency room at Swedish Covenant Hospital as a result of the injuries they sustained on September 25, 2008. Plaintiffs informed the personnel at the hospital that their injuries were sustained on the job. (Amd.Cmpt., ¶12) Plaintiff Abruscato filed an Employee Accident Report with the Cook County Department of Risk Management, Workers' Compensation Division on September 25, 2008. (Amd. Cmpt., ¶13) Plaintiff Wilson filed a similar report on the same date. *Id.*

Under the Illinois Workers' Compensation Act, plaintiffs' employer was legally responsible for all payments related to plaintiffs' injuries, and medical providers are not permitted to attempt to collect payments from plaintiffs.

Swedish knew that plaintiffs' employer was the responsible party and billed the employer. (Amd. Cmpt. Ex. A). Although some of plaintiffs' hospital bills were paid, one medical bill relating to plaintiff Abrascato's injury was not paid, due to an employer error. Instead of

1

attempting to collect the bill from the employer, as it was legally required to do, Swedish sent the account to a collection agency to attempt to collect the bill from plaintiff. One of plaintiff Wilson's bills was similarly not paid promptly, and Swedish assigned his accounts to Medical Business Bureau, LLC ("MBB") for collection in July 2009.

In October 2009, plaintiff Abruscato saw that there was a negative "tradeline" on his credit report from MBB listing the Swedish account, and contacted MBB. MBB had reported Mr. Abruscato's accounts to the credit bureaus for the purpose of coercing him into paying it. (Amd. Cmpt., ¶¶19, 20) Reporting a debt to a credit bureau is "a powerful tool designed, in part, to wrench compliance with payment terms. . . ." *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993). This is especially true now, after the severe tightening of credit standards, and it is virtually impossible to get a mortgage now with a recent outstanding or disputed collection account on your credit report. Pursuant to the Fair Credit Reporting Act, an adverse account can remain on a consumer's credit report for up to seven years.

On November 12, 2009, plaintiff Abruscato received a collection letter from defendant MBB informing him that his medical bill had been assigned for collection. (Amd.Cmpt., Ex. B) MBB reported plaintiffs' accounts to the credit bureaus as if they were delinquent obligations of plaintiffs. After receiving the collection letter from MBB, Mr. Abruscato contacted MBB in an attempt to resolve the situation, although it was actually Swedish's responsibility to do so. He asked for a copy of the bill, and was provided only a copy of an internal MBB document. When Mr. Abruscato asked MBB for the actual bill he was told he would "never" get it from MBB. (Amd.Cmpt., ¶24)

Abruscato therefore contacted Swedish in December 2009 to try to obtain a copy of the bill. He informed them that it was a workers' compensation bill and that he was not responsible for payment. The Swedish representative informed plaintiff that the bill had been submitted to the employer a few times and had not been paid, so they sent it to collections. (Amd.Cmpt., ¶25) In December 2009, plaintiff Abruscato resubmitted the bill he obtained from Swedish to his employer,

2

and the bill was paid to Swedish within sixty days. (Amd.Cmpt., ¶27) Plaintiff Wilson also repeatedly resubmitted the bills to his employer for payment, despite the fact that it was Swedish's obligation to do so, and the accounts were eventually paid in early 2011. (Amd.Cmpt., ¶28) Even after the medical bills were paid, the accounts continued to appear on plaintiffs' credit reports as adverse collection accounts. (Amd.Cmpt., ¶29)

In March 2010, plaintiff Abruscato contacted MBB directly to ask that the account be removed from his credit report and was informed that the account would be removed from his credit report only if he paid them directly. (Amd.Cmpt., ¶30) Plaintiff Abruscato informed MBB that the account was for an injury compensable under the Illinois Workers' Compensation Act. MBB continued to insist that plaintiff pay it himself. (Amd.Cmpt., ¶31) Beginning in March 2010, plaintiff Abruscato sent three dispute letters to Equifax in an attempt to have the account removed from his credit report. On June 1, 2010, June 30, 2010, and July 22, 2010, Equifax responded to plaintiff Abruscato's disputes by informing him that the debt had been verified as belonging to him. (Amd.Cmpt., Ex.t C) On May 10, 2011, after receiving further disputes from Mr. Abruscato, Mr. Abruscato was informed by Equifax that MBB was reporting a zero balance for the account, but not removing it. (Amd.Cmpt., Ex. E) On May 18, 2011, plaintiff Abruscato again wrote to Equifax explaining that the account was covered by a workers' compensation claim, and thus, belonged to his employer, and again requested that the account be removed from his credit report. (Amd.Cmpt., Ex. F). Equifax contacted MBB about Mr. Abruscato's dispute and requested that MBB check its records and report back to it about the accuracy of the information it was reporting about him. By letter dated June 1, 2011, Equifax informed plaintiff that MBB had verified the debt as belonging to him. (Amd.Cmpt., Ex. G)

Mr. Wilson discovered that MBB had reported the Swedish account as being a collection account that was his responsibility when he applied for a student loan for his son. He was denied a loan by the original lender, and had to apply with another lender, because the MBB collection account was on his credit report. (Amd. Cmpt., ¶43)

3

Plaintiffs have suffered actual damages as a result of defendant's conduct, along with the distress of being subjected to collection attempts and adverse credit reporting for debts that were not legally their responsibility. Plaintiff Abruscato had to postpone plans to refinance his home due to this adverse account. Abruscato's credit limits on existing credit cards have been lowered. (Amd.Cmpt., Ex. I) Abruscato was also denied for a new credit card due to the adverse credit reporting. Abruscato also suffered emotional distress and spent extensive time attempting to correct the problem, and also expended time and money on postage and phone calls both in an attempt to both get the bill paid (which was not his responsibility pursuant to Illinois law) and get the item off his credit report. Plaintiff Wilson also had to spend time and money attempting to get the bill paid (which was not his responsibility pursuant to Illinois law) and to get the item off his credit report. (Amd. Cmpt., ¶45)

Plaintiff Abruscato filed a complaint against MBB on January 17, 2012. He filed an amended complaint on March 27, 2012, adding plaintiff Wilson. Count I of the complaint alleges that MBB violated the Fair Debt Collection Practices Act ("FDCPA") when it verified that the debts were plaintiffs and failed to report that the debts were disputed, despite knowing that the debts were covered by worker's compensation, and disputed by plaintiffs. Count II of the complaint alleges that MBB violated the Fair Credit Reporting Act ("FCRA") when it verified the information it was reporting regarding the debt in response to disputes made by plaintiff Abruscato.

I. **PLAINTIFFS' FDCPA CLAIM IS NOT TIME BARRED.**

MBB contends that Count I should be dismissed because MBB's initiated its collection activity and credit reporting in 2009, and that this is a "continuing violation" which is barred by the statute of limitations. While some of MBB's conduct occurred prior to the statute of limitations, MBB clearly violated 15 U.S.C. §1692e(8) in both plaintiffs' cases within one year of the filing of the complaint. 15 U.S.C. §1692e(8) makes it a violation of the FDCPA to communicate or fail to communicate to any person credit information which is known to be false. MBB made such a communication twice to Equifax in Mr. Abruscato's case in May 2011 in response to two

disputes sent by Mr. Abruscato to Equifax (Amd.Cmpt. ¶¶34-38[1], and Exhibits D, E and G). In Mr. Wilson's case, the facts will show that Mr. Wilson submitted an online dispute to the credit bureaus on or about July 28, 2011. MBB responded to the disputes by verifying the account at some point after that date.[2] In both cases, plaintiffs complained to Equifax that the accounts were not their responsibility because they were covered and eventually paid by worker's compensation, and in both cases, MBB verified that the accounts should be reported as plaintiffs' debts. MBB's verification that the accounts belonged to plaintiffs constituted a violation of 15 U.S.C. §1692e(8), which occurred on the dates MBB verified the accounts to Equifax.

Plaintiffs also maintain that MBB's continued reporting of the debts as plaintiffs to the credit bureuas each month as recently as June 2011 for Mr. Abruscato, and July 2011 for Mr. Wilson constituted a violation of not only §1692e(8), but also §1692e(2) (misrepresenting the character or legal status of a debt). Courts have found that each monthly reporting of a debt to the credit bureaus constitutes a separate violation. *Purnell v. Arrow Financial Services, LLC*, 2008 U.S.App. LEXIS 25488 (6th Cir. Dec. 16, 2008) (repeated communications to the credit bureaus within the limitations period are not time barred). The *Purnell* decision is based on the majority view which finds that "for statute-of-limitations purposes, discrete violations of the FDCPA should be analyzed on an individual basis." *Solomon v. HSBC Mortg. Corp.*, 2010 U.S. App. LEXIS 16659, 2010 WL 3069699, at *3 & n.3; *Arvie v. Dodeka,* 2010 U.S.Dist. Lexis 113306, *28 (S.D.Tex. Oct. 25, 2010); *Brandon v. Fin. Accounts Servs. Team, Inc.*, 701 F. Supp. 2d 990, 995-6 (E.D. Tenn. 2010) ("Further, the Court finds persuasive the statements in *Purnell* that incorrect information in a credit report, to the extent it is reported again and again, may constitute a "separate harm" to a plaintiff for purposes of the FDCPA."); *Basile v. I.C. Systems,* 2011 U.S.Dist. LEXIS 105932,*11

---

[1] Paragraph 34 of the Amended Complaint inadvertently says that Exhibit D was sent in 2010, but as indicated on the exhibit itself, and Equifaxes response (Exhibit E to the Amd.Cmpt.) it was sent in May 2011.

[2] The specific dates of Mr. Wilson's disputes are not included in the Amended Complaint, but Mr. Wilson is willing to amend the complaint to add those details, if necessary.

5

(W.D.N.Y. Sep. 19, 2011) (the fact that defendants first made similar statements before the one year period does not bar plaintiff's claims); *Ellis v. Gen. Rev. Corp.*, 274 F.R.D. 53, 58 (D.Conn. 2011); Craig *v. Meyers*, 2009 U.S. Dist. LEXIS 96912, 2009 WL 3418685, at *4 (S.D. Ohio Oct. 19, 2009); *Ehrich v. RJM Acquisitions LLC*, 2009 U.S. Dist. LEXIS 113929, *8 2009 WL 4545179, at *2 (E.D.N.Y. Dec. 4, 2009) ("separate communications that violate the FDCPA can create separate causes of action"); *McCorriston v. L. W.T., In.*, 536 F. Supp. 2d 1268,1272 (M.D. Fla. 2008); *Murphy v. MRC Receivables*, 2007 U.S.Dist. LEXIS 2929, 2007 WL 148823, at *3 (W.D.MO, Jan. 12, 2007); *Ortiz v. Accounts Receivable Mgmt., Inc.*, No. 09-80124-CIV, 2010 U.S. Dist. LEXIS 20944, 2010 WL 547910, at *2 (S.D. Fla. Feb. 12, 2010); *Pittman v. J.J. MacIntyre, Co.*, 969 F. Supp. 609, 611 (D.Nev. 1997); *Puglisi v. Debt Recovery Solutions LLC,* 2010 U.S. Dist. LEXIS 6120, 2010 WL 376628, at *3 (E.D.N.Y. Jan. 26,2010); *Tucker v. Mann Bracken*, 2009 U.S. Dist. LEXIS 3962, 2009 WL 151669, at *4 (M.D.Pa. Jan. 21, 2009).

MBB relies on *Gulley v. Pierce & Assocs.*, 436 F.Appx. 662 (7th Cir. 2011), a non-precedential decision, which alleged violations of a different section of §1692. Unlike plaintiffs in the present case, the *Gulley* plaintiff did not dispute the debt within the one year statute of limitations, so there appears to have been no claim that the defendant provided improper information regarding a debt after a dispute within the limitations period. Perhaps because *Gulley* appears to have been a pro se case, the Seventh Circuit did not address the split of authorities over the continuing violation rule, nor did it take a side in the debate. Similarly, *Flores v. Millennium Interests, LTD.,* 273 F.Supp.2d 899, 901 (S.D.Tex. 2003), contains no analysis regarding the split of authorities, conflicts with a later case from the same District, and contains no indication that the debt collector received disputes regarding the debt in question within the limitations period yet continued to report the false information.

Plaintiffs maintain that the majority view is the better view, and should be followed by this Court. Ruling otherwise would give debt collectors a license to violate the FDCPA ad infinitum, so long as the consumer does not sue within one year of the first violation.

The reasoning in *Judy v. Blatt, Hasenmiller, Leibsker and Moore, LLC,* 2010 U.S.Dist. LEXIS 8027 (N.D.Ill. Jan. 29, 2010) and *Hardaway v. CIT Group/Consumer Finance, Inc.*, 2011 WL 3296825 (N.D.Ill. Aug. 1, 2011), which discuss a continuing violation caused by the filing of an improper collection case, should not be applied here, as that case did not involve distinct communications each month that violated §1262e.

Moreover, the reasoning in the one of the cases relied on by MBB supports plaintiffs' position in this case. In *Peterson v. Portfolio Recovery Assoc.*, 430 Fed.Appx. 112, 115 (3d Cir. 2011), the Third Circuit noted that the statute "should begin to run on the date of the debt collector's last opportunity to comply with" the Act. Applying that logic to this case, at the earliest, MBB's last opportunity to comply was when it received notice from Equifax in May and July 2011, that plaintiffs disputed the fact that it was reporting the debts as theirs to the credit bureaus, and at the latest, its last opportunity was the last time it once again reported the debts to the credit bureaus, in June and July 2011. It is simply untrue that defendant "would have no longer had an opportunity to comply with the FDCPA because there was already a violation." There was a new violation every time MBB made an additional false reporting regarding the account, and when MBB received notifications from Equifax that plaintiffs were disputing the information it was reporting in May and July 2011. The fact that MBB misreported the account to Equifax in 2009, does not require it to continue misreporting the account to Equifax in 2011.

MBB focuses on when plaintiffs initially discovered the problem, and ignores the disputes plaintiffs made within the limitations period, and the fact that MBB responded to the disputes by falsely verifying its reporting, and then continued to report the debts to the credit bureaus each month thereafter. As far as plaintiffs' allegations regarding the older conduct, plaintiffs are free to allege facts regarding the prior incidents to support their contention that MBB was aware that the debts were not theirs when it verified the debts to Equifax and continued to report the debts, and to support their request for damages. "[T]he statute of limitations is not intended to deprive plaintiffs of the use of evidence of violations that took place more than a year before filing."

*Padilla v. Payco Gen. Am. Credits, Inc.*, 161 F. Supp. 2d 264, 273 (S.D.N.Y. 2001).

## CONCLUSION

For the reasons stated above, plaintiffs request that this Court deny MBB's motion to dismiss the amended complaint.

/s/ Tara L. Goodwin
Tara L. Goodwin

Daniel A. Edelman
Tara L. Goodwin
Rupali R. Shah
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

**CERTIFICATE OF SERVICE**

   I, Tara L. Goodwin, hereby certify that on June 14, 2012, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system and notification of such filing was sent to the following parties:

Michael D. Douglas
Lewis P. Perling
Barry Goheen
King & Spalding LLP
1180 Peachtree Street
Atlanta, Georgia 30309-3521
(404) 572-3079
FAX: (404) 572-5172

David M. Schultz
Corinne C. Heggie
Nicholas D. O'Conner
Hinshaw & Culbertson LLP
Suite 300
222 North LaSalle Street
Chicago, IL 60601
(312) 704-3527
FAX: (312) 704-3001

Jeremy S. Unruh
Rodney Lewis
Polsinelli Shughart, PC
161 N. Clark St.
Chicago, IL 60601
312-819-1900

              /s/ Tara L. Goodwin
              Tara L. Goodwin


Daniel A. Edelman
Tara L. Goodwin
Rupali R. Shah
EDELMAN, COMBS, LATTURNER
 & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)